SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
George A. Zimmerman
Jonathan L. Frank
Jessica A. Barcus
Four Times Square
New York, New York 10036
(212) 735-3000

*Attorneys for FPL Group, Inc.*
*and West Boca Security, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ADELPHIA RECOVERY TRUST, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 11-cv-06847 (PAC) |
| | : | |
| FPL GROUP, INC., | : | |
| et al., | : | **ORAL ARGUMENT REQUESTED** |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO WITHDRAW THE REFERENCE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

ARGUMENT .......... 3

I. THE STERN DECISION APPLIES DIRECTLY TO PLAINTIFF'S CLAIM .......... 3

II. THE ORION FACTORS WEIGH IN FAVOR OF WITHDRAWAL .......... 4

A. Questions of Efficiency and Uniformity Turn on the Bankruptcy Court's Inability to Enter Final Judgment .......... 4

B. Defendants Did Not Consent to Final Adjudication in the Bankruptcy Court .......... 6

C. The Bankruptcy Court's Familiarity with the Debtors Has No Bearing on this Motion .......... 7

D. The Motion Is Timely .......... 8

E. The Defendants Are Not Forum-Shopping .......... 8

CONCLUSION .......... 10

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

In re Bearingpoint, Inc.,
453 B.R. 486 (Bankr. S.D.N.Y. 2011)....................8

Brook v. Ford Motor Credit Co. (In re Peacock II),
455 B.R. 810 (Bankr. M.D. Fla. 2011)....................10

Development Specialists, Inc. v. Akin Grump Strauss Hauer & Feld LLP,
Nos. 11 civ. 5994 et al., 2011 WL 5244463 (S.D.N.Y. Nov. 2, 2011)..........2, 3, 5, 6, 7, 8

Executive Benefits Insurance Agency v. Arkison
(In re Bellingham Insurance Agency, Inc.),
No. 11-35162, 2011 WL 5307852 (9th Cir. Nov. 4, 2011)....................1, 4

Fort v. SunTrust Bank (In re International Payment Group, Inc.),
Adv. No. 10-80049, 2011 WL 5330783 (Bankr. D. S.C. Nov. 3, 2011)....................4

Granfinanciera, S.A. v. Nordberg
492 U.S. 33 (1989)....................3

Lone Star Industries, Inc. v. Rankin County Economic Development District
(In re New York Trap Rock Corp.), 158 B.R. 574 (S.D.N.Y. 1993)....................10

Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.),
834 F.2d 1134 (2d Cir. 1987)....................7

Meoli v. Huntington National Bank (In re Teleservices Group, Inc.),
456 B.R. 318 (Bankr. W.D. Mich. 2011)....................3, 7, 8

Official Committee of Unsecured Creditors of FMI Forwarding Co.
v. Union Transport Corp. (In re FMI Forwarding Co.),
No. 00 B. 41815(CB), 2005 WL 147298 (S.D.N.Y. Jan. 24, 2005)....................10

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
4 F.3d 1095 (2d Cir. 1993)....................4

Schneider v. Riddick III (In re Formica Corp.),
305 B.R. 147 (S.D.N.Y. 2004)....................10

Stern v. Marshall,
131 S. Ct. 2594 (2011)....................1, 7

Stoebner v. PNY Technologies, Inc. (In re Polaroid Corp.),
451 B.R. 493 (Bankr. D. Minn. 2011)....................7

Technical Automation Services Corp. v. Liberty Surplus Insurance Corp.,
No. 10-20640 (5th Cir. Sept. 9, 2011) (per curiam)....................4

Walker, Truesdell, Roth & Associates. v. Blackstone Group, L.P. (In re Extended Stay, Inc.), Nos. 11 Civ. 5394 et al., 2011 WL 5532258 (S.D.N.Y. Nov. 10, 2011) ..........5

**Statutes & Rules**

28 U.S.C. § 157 ..........5

Fed. R. Bankr. P. 9033 ..........1

Defendants FPL Group[1] and West Boca Security respectfully submit this Reply Memorandum of Law in further support of their motion to withdraw the reference, dated September 28, 2011 (the "Motion").

**INTRODUCTION**

In this action, Plaintiff asserts a state law fraudulent transfer claim against Defendants, who did not file a proof of claim in the underlying bankruptcy proceedings. Accordingly, as established in Defendants' opening memorandum, under the Supreme Court's recent ruling in Stern v. Marshall, 131 S. Ct. 2594 (2011) ("Stern"), the Bankruptcy Court lacks the constitutional authority to render a final judgment in this action, notwithstanding that it is a "core" proceeding under Section 157 of the Bankruptcy Code. Indeed, some bankruptcy courts have interpreted Stern to mean that they do not have subject matter jurisdiction over this type of state law claim (see Defs.' Br. at 6-7), and recently, the Ninth Circuit Court of Appeals sua sponte raised this very issue.[2] While Plaintiff purports to disagree, regardless of who is right, the only way to evade this quagmire is to withdraw the reference.

Furthermore, in the absence of the parties' consent to entry of a final judgment – which consent may be constitutionally inadequate in any event – the Bankruptcy Court can at most issue a report and recommendation of proposed findings of fact and conclusions of law, subject to (i) de novo review, and (ii) potential additional evidentiary/trial proceedings in this Court.[3] The only way to escape the prospect of multiple trial/evidentiary proceedings is to withdraw the reference. Under these circumstances, Judge Gerber supported Defendants' Motion as the only sure way to avoid the "uncertainty [which] is rampant" generated by Stern. (Ex. F. at 25:19.)

---

1 Citations to "Ex. __" are to the exhibits annexed to the Declarations of George A. Zimmerman, respectively dated September 28 and November 22, 2011. Citations to "Pl.'s Ex. __" are to the exhibits annexed to the Declaration of Michael C. Harwood, dated November 7, 2011.

2 Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), No. 11-35162, 2011 WL 5307852, at *1 (9th Cir. Nov. 4, 2011).

3 Federal Rule of Bankruptcy Procedure Rule 9033(d) provides that the district court, on appeal, "shall make a de novo review upon the record or, after additional evidence, of any portion of the bankruptcy judge's findings of fact . . . The district court may accept, reject . . . the proposed findings of fact or conclusions of laws, receive further evidence or recommit the matter to the bankruptcy judge with instructions." (emphasis added).

For the same reasons, just three weeks ago Judge McMahon withdrew the reference of, among others, a fraudulent transfer claim. Development Specialists, Inc. v. Akin Grump Strauss Hauer & Feld LLP, Nos. 11 civ. 5994 et al., 2011 WL 5244463 (S.D.N.Y. Nov. 2, 2011).

In its response, Plaintiff erects a series of straw-man arguments that are demonstrably wrong.

1) Plaintiff claims that this case was set for trial on September 16, and that Defendants belatedly moved to withdraw the reference for the improper purpose of delaying trial. (Pl.'s Br. at 14.) That is false. Judge Gerber made it clear at an August 17 Conference that the previously scheduled trial would not go forward as planned, stating that a mid-September "three-[d]ay trial with these [Stern] uncertainties strikes me as being more than a little bit unrealistic." (Ex. E. at 9:22-25 (emphasis added).)

2) Plaintiff argues that the Motion is an improper attempt to forum-shop following an adverse ruling on Defendants' motion for leave to amend their answer ("Motion to Amend"). (Pl.'s Br. at 13-14, 17-19.) That is wrong. At the August 17 Conference, it was Judge Gerber, not Defendants, who first raised the issue of a potential motion to withdraw the reference in light of the Stern ruling. (Ex. E. at 10-11.) In any event, the notion that Defendants waited to move to withdraw the reference until after the Motion to Amend was denied is silly, as that motion had been fully briefed and argued before Stern was decided.

3) Plaintiff argues that the interest of judicial efficiency would be served by denying the Motion so that Judge Gerber can use his intimate knowledge of the debtors in rendering proposed findings of fact for this Court's de novo review. (Pl.'s Br. at 2, 19.) That is wrong on two fronts. First, the issue in this dispute is Adelphia's solvency in January 1999, a factually intensive dispute with which Judge Gerber has not dealt. Second, Judge Gerber has categorically rejected the propriety of applying his generalized familiarity with the debtors to a highly fact specific adversary proceeding as improper.

4) Plaintiff argues that Defendants "consented" to the Bankruptcy Court rendering a final judgment by having participated, pre-Stern, in the Bankruptcy Court litigation without moving to withdraw the reference. (Pl.'s Br. at 11-14.) Judge Gerber correctly rejected this argument below, as did Judge McMahon in Development Specialists, finding that prior to Stern, because a fraudulent transfer case was a core proceeding under Section 157, there was little, if any, basis to move to withdraw the reference. Only after Stern did it become known that this was not the case. Defendants' pre-Stern participation, therefore, did not constitute a knowing wavier of their constitutional right to an Article III final adjudication of this dispute.

In the final analysis, in light of Stern the Bankruptcy Court cannot issue a final judgment in this action, and any proposed findings will be subject to de novo review. As Judge McMahon recently explained, this is the critical factor on this Motion: "where the Bankruptcy Court lacks final adjudicative authority, the remaining Orion considerations will often tend to point toward

withdrawal." Development Specialists, 2011 WL 5244463, at *7. When one adds to this all of the other uncertainties surrounding Stern, the outcome is clear. The Motion should be granted.

## ARGUMENT

### I. THE STERN DECISION APPLIES DIRECTLY TO PLAINTIFF'S CLAIM

Two things are certain: first, this Court, and only this Court, has jurisdiction and the constitutional authority to conduct a trial and render a final judgment with respect to Plaintiff's claim for fraudulent conveyance; second, in the wake of Stern, it is not clear what, if any, jurisdiction or statutory authority the Bankruptcy Court has over this matter and any opinion to the contrary is just that – a litigable opinion concerning supremely unsettled law.

Judge Gerber confirmed that he was "getting this [Stern] nightmare" in virtually every matter before him. (Ex. E at 4:19-23.) One bankruptcy court described Stern as having "dropped a bombshell." Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.), 456 B.R. 318, 322 (Bankr. W.D. Mich. 2011). In the five months since its issuance, Stern has been cited in over 150 decisions, discussed in 75 articles, treatises and annotated statutes updates. These decisions and commentaries evidence profound confusion as to Stern's meaning and scope, including whether bankruptcy courts have subject matter jurisdiction over fraudulent transfer claims outside of the claims resolution process, such as the claim in this action. (Defs.' Br. at 5-8.)[4]

Plaintiff disagrees, dismissing any suggestion that Stern raised jurisdictional issues or impacts the traditional division of labor between the district and bankruptcy courts as "extreme and unwarranted." (Pl.'s Br. at 1, 6, 14.) According to Plaintiff, Stern merely "reiterates a 22-year-old Supreme Court holding in Granfinanciera, S.A. v. Nordberg."[5] (Id. at 14.) But numerous courts, including Judge Gerber below and Judge McMahon of this Court, have

---

4 Plaintiff attempts to recast Defendants' justifiable concerns regarding Stern's effect into an affirmative "argument that Stern eliminates subject matter jurisdiction." (Pl.'s Br. at 10.) Defendants make no such contention, and instead argue that Stern created a highly litigable issue as to a bankruptcy court's ability to hear this action, an uncertainty which weighs in favor of permissive withdrawal. (Defs.' Br. at 2, 5-8.)

5 492 U.S. 33 (1989).

rejected Plaintiff's view. Indeed, this month, the Ninth Circuit, sua sponte, requested amicus curiae to submit briefs addressing Stern's impact on the bankruptcy court's subject matter jurisdiction in a fraudulent conveyance action. In re Bellingham Ins. Agency, Inc., 2011 WL 5307852 at *1; see also Fort v. SunTrust Bank (In re Int'l Payment Group, Inc.), Adv. No. 10-80049, 2011 WL 5330783, at *3, n.10 (Bankr. D. S.C. Nov. 3, 2011) (acknowledging Stern presents a viable subject matter jurisdiction question).[6]

Regardless of whether Plaintiff's position is ultimately upheld, trial of this action in the Bankruptcy Court undeniably would lead to additional extensive and unnecessary proceedings which can quickly and inexpensively be eliminated by withdrawing the reference of this action to this Court.[7]

## II. THE ORION FACTORS WEIGH IN FAVOR OF WITHDRAWAL

### A. Questions of Efficiency and Uniformity Turn on the Bankruptcy Court's Inability to Enter Final Judgment

The parties do not dispute that under the Orion test "[a] district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993). The court must then "weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors." Id.

Seizing on Orion's reference to the core/non-core distinction, Plaintiff argues that this case is a core proceeding under 28 U.S.C. § 157, and concludes that, as a consequence, the

6 The Fifth Circuit Court of Appeals apparently believes that Stern's impact on jurisdiction may extend still further, as it directed parties to submit briefs "addressing whether the reasoning of Stern applies to magistrate judges." Tech. Automation Servs. Corp. v. Liberty Surplus Ins. Corp., No. 10-20640, Slip op. at 2 (5th Cir. Sept. 9, 2011) (per curiam). (Ex. G.)

7 Indeed, the situation here – a pure state law claim that will not be resolved as part of the claims process – is exactly the type of case to which Stern, even at its narrowest, applies directly. Under these limited circumstances, not only is withdrawal appropriate and prudent, but there is little chance a decision granting the Motion will open the floodgates to a radical restructuring of the division of labor between bankruptcy and district courts beyond that specifically set forth in Stern.

reference should not be withdrawn. But Plaintiff's position no longer holds water, as the Court recently explained in Development Specialists. In that case, which is squarely on point here, the Court granted the motion to withdraw the reference of, among other claims, a state law fraudulent transfer claim. While acknowledging that such claims are core proceedings under 28 U.S.C. § 157(b)(2)(H), the Court explained that Stern focused more sharply the Orion core/non-core analysis: the critical factor is whether the bankruptcy court can render a final judgment – if not, withdrawal is appropriate:

> Before Stern, courts (including the Second Circuit) were accustomed to resolving whether the Bankruptcy Court could finally adjudicate a given claim by asking whether or not it could be considered "core" under 28 U.S.C. § 157. . . . However, Stern held that the constitutional question was not congruent with the text of the statute. . . . So after Stern, one can still apply the Orion [test] but not looking at whether the matter can be classified as "core" under 28 U.S.C. § 157, but rather at whether, under Stern, the Bankruptcy Court has the final power to adjudicate it. If it does not have that power, there will be no advantage to allowing the matter to be heard in Bankruptcy Court, because this Court will eventually need to review the Article I Court's determinations de novo . . . .

Development Specialists, 2011 WL 5244463 at *6-7.[8]

[8] Plaintiff submitted a supplemental letter brief concerning the recent decision in Walker, Truesdell, Roth & Assocs. v. Blackstone Group, L.P. (In re Extended Stay, Inc.), Nos. 11 Civ. 5394 et al., 2011 WL 5532258 (S.D.N.Y. Nov. 10, 2011). Unlike Development Specialists, which is directly on point and rejects all of Plaintiff's arguments, Extended Stay is inapposite. That case involved a motion to withdraw the reference of 125 claims asserted in 5 actions against dozens of defendants. Unlike this case, "many of these [Extended Stay] claims are asserted against creditors who filed proofs of claim . . . [and] would likely be 'resolved in the process of ruling on [their] proof[s] of claim.'" Id. at *6. Those claims raised no Stern issues, as the Stern decision explicitly noted the bankruptcy court had constitutional authority to render final judgments in such cases. Under those circumstances, withdrawing the reference would dramatically alter the division of labor between the courts by requiring the district court, in the first instance, to sift through voluminous claims to determine whether they raise Stern issues. Here, there is no such issue – there is only one claim that squarely invokes Stern's ramifications and uncertainties.

The Bankruptcy Court cannot render a final judgment in this proceeding.[9] "[W]here the Bankruptcy Court lacks final adjudicative authority, the remaining Orion considerations will often tend to point toward withdrawal . . . ." Id. This observation applies with added power here because not only is there no final adjudicative authority, but the Bankruptcy Court's authority to issue a report and recommendation is also subject to legitimate challenge. Those issues, and the added time and expense to the court system as a whole and the litigants can only be avoided by granting the Motion.

**B. Defendants Did Not Consent to Final Adjudication in the Bankruptcy Court**

Plaintiff argues that Defendants' pre-Stern litigation conduct evidenced their consent to the Bankruptcy Court's entering a final judgment in this action. (Pl.'s Br. at 11-14.) Leaving aside the fact that the parties cannot confer subject matter jurisdiction by consent, Plaintiff's argument fails for multiple reasons.

First, Plaintiff contends that under Stern, Defendants' participation in the bankruptcy court proceedings constituted a waiver of their right to have an Article III court adjudicate this case. The Stern Court held only that a creditor who initiated a non-core state law defamation claim against the debtor, and litigated that claim in the bankruptcy court, consented to that court rendering a final adjudication on that claim. That holding is irrelevant here – Defendants did not initiate any claims against the debtors. The crucial part of that decision is that the Stern Court held that the creditor's participation in the proceedings did not constitute consent to the bankruptcy court's ability to render a final adjudication of the debtor's core counterclaim against

[9] Defendants' inability to consent to a final adjudication in the Bankruptcy Court has nothing to do with forum shopping; Defendants have no such agenda. Parties simply cannot confer subject matter jurisdiction by consent. Accordingly, unless and until there is a binding appellate court ruling on the subject matter jurisdiction issue, even if Defendants consent to a final adjudication below, the jurisdictional issue can always be raised on appeal (by the parties or by the court, sua sponte); and, if it is determined that there was no subject matter jurisdiction, the entire trial will have been for naught. Notably, while Judge Gerber indicated his view that the parties can validly consent to a final adjudication, he nevertheless supported Defendants' Motion in recognition of the vast uncertainties in this and other areas. (Ex. F. at 22-26.)

him. 131 S. Ct. at 2620. But Plaintiff fails to mention this holding, perhaps because it is fatal to its consent argument.[10]

Second, Defendants' participation in the proceedings below occurred before Stern determined that they had a right to an Article III adjudication. As demonstrated above and more fully in Defendants' opening brief, Stern changed the judicial landscape. (See Defs.' Br. at 4-9.) Post-Stern Courts have made it clear that under such circumstances, one should not "infer from [Defendants'] pre-Stern litigation conduct a 'knowing and voluntary' relinquishment of rights to an Article III decision-maker" as "a waiver of important rights should only be found where it is fully knowing." Development Specialists, 2011 WL 5244463, at *12. Indeed, Judge Gerber – clearly fully aware of the parties' participation in the proceedings below – rejected Plaintiff's consent argument, stating that he would not "shove judicial estoppel down a party's throat when it, in my view, justifiably believed that a statute meant what it said and that it assumed that the statute was constitutional[.]" (Ex. F. at 25:5-10.)[11]

**C. The Bankruptcy Court's Familiarity with the Debtors Has No Bearing on this Motion**

Plaintiff incorrectly argues that withdrawal of the reference would result in inefficiency due to the "undisputed" fact "that the Bankruptcy Court is intimately familiar with facts and legal issues associated with this lawsuit" (Pl.'s Br. at 2) and familiarity with the Adelphia bankruptcy in general. This dispute involves whether or not Adelphia was solvent and/or received reasonably equivalent value in connection with the transaction at issue that occurred in January 1999, three years prior to Adelphia's bankruptcy. Those issues have never been presented to the Bankruptcy Court, which has no familiarity with the merits of this dispute. In any event, Judge

[10] Plaintiff's single pre-Stern implied consent case demonstrates that Defendants' actions are not sufficient to find implied consent to final determination by the Bankruptcy Court, as implied consent was found there because the defendants did not argue lack of consent until after trial. See Men's Sportswear, Inc. v. Sasson Jeans, Inc. (In re Men's Sportswear, Inc.), 834 F.2d 1134, 1137 (2d Cir. 1987). (Pl.'s Br. at 12, n.12.)

[11] See also Stoebner v. PNY Techs., Inc. (In re Polaroid Corp.), 451 B.R. 483, 497-98 (Bankr. D. Minn. 2011) (past significant litigation did not equate to newly given express consent as required by Stern); In re Teleservices Group, Inc., 453 B.R. at 339 (twelve days of trial testimony would not suffice as defendant "clearly has not given its consent when that consent is now recognized for what it must be – a knowing waiver of [litigant]'s right to have an Article III judge, as opposed to me, make the final decision").

Gerber already addressed this issue in In re Bearingpoint, Inc., 453 B.R. 486 (Bankr. S.D.N.Y. 2011), where he explicitly rejected the notion that his familiarity with debtors as a result of having presided over their Chapter 11 process weighed in favor of keeping certain litigation matters in the bankruptcy court: "[i]t would be manifestly improper for me to determine adjudicative facts on evidence from outside that record, or based on knowledge or perceptions developed in the course of the earlier chapter 11 case." Id. at 493. Clearly, no one is in a better position than Judge Gerber to determine the relevance of his knowledge of the debtors on this Motion. His actions both in Bearingpoint and in his affirmative support of this Motion definitively puts this argument to rest.

**D. The Motion Is Timely**

It is undisputed that Defendants moved to withdraw the reference promptly after Stern. (Defs.' Br. at 10, n.8.) Plaintiff, however, maintains that the Motion is both untimely and evidence of forum shopping because Stern merely "reiterates" its own precedent. (Pl.'s Br. at 14.) Judge McMahon, however, squarely rejected this argument in holding that "[o]nly in Stern did the Court actually hold that a fraudulent conveyance action implicating private rights must be finally determined in an Article III forum" and in noting that before Stern "a responsible attorney might well not have moved for withdrawal of the reference under Orion." Development Specialists, 2011 WL 5244463, at *12.[12]

**E. The Defendants Are Not Forum-Shopping**

Plaintiff alleges that Defendants engaged in "gamesmanship" by filing this Motion "tactically, on the eve of trial," and in order to forum shop after losing the Motion to Amend. (Pl.'s Br. at 14, 17-18.) The factual record, however, proves each of Plaintiff's allegations to be false.

---

12 See also In re Teleservices Group, Inc., 456 B.R. at 339, n.66 (holding that "the same accusation could have been made against the stepson in Stern yet the Court still allowed him to proceed with his constitutional challenge. I see no reason why [defendant] should be treated any differently here").

First, this action was not, as Plaintiff alleges, "a few days from a scheduled bench trial when Defendants announced their intention to move to withdraw the reference to the Bankruptcy Court." (Pl.'s Br. at 1.) The parties learned in early August that the September 16, 2011 date set forth in the scheduling order was no longer available and neither the parties nor the court ever subsequently agreed to or scheduled a new date.[13] (Ex. E. at 3:8-17.) Moreover, Judge Gerber, not Defendants, first raised the specter of a motion to withdraw the reference at the August 17 Conference and directed the parties to be prepared to set forth their views at a September 7 Conference (id. at 11:3-5); and at that time he made it perfectly clear that this case would not be tried in mid-September in light of the uncertainties raised by Stern (id. at 9:22-25).

Second, as counsel for Plaintiff admitted at the September 7 Conference, Plaintiff alone is responsible for the fact the FPL Action has yet to go to trial more than seven years after Plaintiff filed its Complaint. (Ex. F. at 22:1-4 (admitting that "the delays in this case were all of our own making").)

Third, Plaintiff quotes extensively from passages in which Judge Gerber expressed his frustration with Defendants' prior counsel for having waited an inordinately long period of time to raise an affirmative defense and seeks to paint the present Motion with the same brush. (Pl.'s Br. at 2, 5-6, 13-14.) Plaintiff, however, fails to clarify that the alleged "gamesmanship" belonged solely to this prior counsel. Specifically, Judge Gerber indicated he did "not believe that FPL Group's request to raise the defense explicitly now, or the conduct of New Counsel, can be regarded as [bad faith]" (Pl.'s Ex. 1. at 7-9); and Judge Gerber praised new counsel for "arguing the matter with candor" (id. at 6, n.7). Plaintiff's attempt to raise an inference of a similar bad faith litigation strategy by linking the current Motion to prior counsel's past actions is disingenuous.

In any event, the parties briefed and argued the Motion to Amend in the winter of 2011, months before the Supreme Court issued Stern. The bankruptcy court issued its decision on July

[13] Further, Plaintiff is not correct when it states that the parties agreed that this action would be completed in three days. (Pl.'s Br. at 22.) Only Plaintiff holds such a belief, as evidenced by the hearing transcript to which it cites. (Ex. F. at 21:2-14.)

13, 2011, a mere three weeks after Stern. (Pl.'s Ex. 1. at 20.) Thus, this Motion does not evidence any impermissible agenda.[14] It simply evidences Defendants' desire to avoid unnecessary litigation and attendant costs by trying the case to a final verdict in a court of unquestionable authority – an agenda which Judge Gerber expressly endorsed, however reluctantly.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court enter an order withdrawing the reference of the FPL Action from the Bankruptcy Court.

Dated: New York, New York
November 22, 2011

/s/ George A. Zimmerman

George A. Zimmerman
(george.zimmerman@skadden.com)
Jonathan L. Frank
(jonathan.frank@skadden.com)
Jessica A. Barcus
(jessica.barcus@skadden.com)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Phone: (212) 735-3000
Fax: (212) 735-2000

*Attorneys for FPL Group, Inc. and West Boca Security, Inc.*

[14] Plaintiff cites to cases which involve movants with reasons to forum shop, confirming that Defendants, which had no such reasons, did not do so here. See, e.g., Brook v. Ford Motor Credit Co. (In re Peacock II), 455 B.R. 810, 813, n.4 (Bankr. M.D. Fla. 2011) (feared defendants' motions motivated by a desire to draw a judge other than the current one, who had recently issued a ruling in a similar proceeding which, if repeated in the instant proceeding, would defeat their affirmative defense); Official Comm. of Unsecured Creditors of FMI Forwarding Co. v. Union Transport Corp. (In re FMI Forwarding Co.), No. 00 B 41815, 2005 WL 147298, at *7 (S.D.N.Y. Jan. 24, 2005) (only reason for motion to withdraw was to require the district court to rule on a substantive motion before and instead of the bankruptcy court); Schneider v. Riddick III (In re Formica Corp.), 305 B.R. 147, 151 (S.D.N.Y. 2004) (plaintiff sought to withdraw reference after motion to dismiss fully briefed but prior to bankruptcy court's decision); Lone Star Indus., Inc. v. Rankin Cnty. Econ. Dev. D. (In re N.Y. Trap Rock Corp.), 158 B.R. 574, 577 (S.D.N.Y. 1993) (forum shopping evidenced in attempt to transfer New York bankruptcy action to Mississippi district court). (Pl.'s Br. at 17-19.)