USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 30, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ADELPHIA RECOVERY TRUST,

               Plaitniff,

- against -            11 Civ. 6847 (PAC)

FLP GROUP, INC., ET AL.,        OPINION & ORDER

               Defendants.
-----------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

      This action involves a fraudulent transfer claim, brought by Plaintiff Adelphia Recovery Trust ("Plaintiff") against Defendants FPL Group, Inc. and West Boca Security, Inc. (collectively, "Defendants"), that for the last seven years has been litigated in Bankruptcy Court, under the above caption. Immediately after the Supreme Court's decision in Stern v. Marshall, 564 U.S. ---, 131 S.Ct. 2595 (2011) ("Stern"), concerning whether a Bankruptcy Court may constitutionally adjudicate a "core" state law claim to final judgment, Defendants moved, pursuant to 28 U.S.C. § 157(d), to withdraw the reference to Bankruptcy Court. Plaintiff opposes the motion.

      For the reasons that follow, Defendants' motion to withdraw reference to the Bankruptcy Court is DENIED.

## BACKGROUND[1]

      In January 1999, Adelphia, a cable company, repurchased approximately 1.1 million shares of its stock from Defendant FLP Group, Inc. for approximately $149 million. On June 25, 2002, Adelphia and its affiliated debtors filed for Chapter 11

---

[1] The following facts and procedural history are taken from the parties' papers and do not appear to be in dispute.

bankruptcy. On June 24, 2004, Adelphia filed the instant action against Defendants for constructive fraudulent conveyance, in violation of Sections 544(b) and 550 of the Bankruptcy Code. Plaintiff alleged that in the January 1999 transaction, Adelphia did not receive the reasonably equivalent value to the $149 million it paid to FPL Group.

On January 3, 2007, the Bankruptcy Court confirmed Adelphia's plan of reorganization and, as a result, transferred title of the current action to Plaintiff, and vested the Bankruptcy Court with exclusive jurisdiction over this action. In December 2007, Plaintiff moved to withdraw the reference to Bankruptcy Court in this and another Adelphia action, in order to consolidate all litigation proceedings before one district court. Defendants opposed the motion. District Court Judge McKenna denied Plaintiff's motion to withdraw the reference in this particular action. See No. 07 Civ. 11152.

This matter proceeded in Bankruptcy Court and trial on Plaintiff's fraudulent transfer claims was scheduled for September 16, 2011. In January 2011, Defendants' new counsel move to amend Defendants' answer and assert an additional affirmative defense. On July 13, 2011, the Bankruptcy Court denied Defendants' motion. On August 17, 2011, Defendants notified the Bankruptcy Court that they wished to file a motion to withdraw the reference to Bankruptcy Court in light of Stern. On September 7, 2011, the Bankruptcy Court authorized Defendants to make their motion. In doing so, the Bankruptcy Court expressed no view on whether it has constitutional authority to adjudicate a fraudulent transfer action to a final judgment.

## LEGAL STANDARD

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under" or "related to" cases under title 11. 28 U.S.C. § 1334. Under 28

U.S.C. § 157(a), a district court may refer actions within its bankruptcy jurisdiction to bankruptcy judges of the district. The Southern District of New York has a standing order that provides for automatic reference. See Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11," subject to deferential review by a district court. "Where a bankruptcy court acts in a non-core proceeding, a final order may be issued only in one of two ways: by the district court after de novo review of the bankruptcy court's proposed factual findings and legal conclusions, § 157(c)(1); or by the bankruptcy court with the consent of the parties, § 157(c)(2)." Cent. Vermont Pub. Serv. Corp. v. Herber, 341 F.3d 186, 190 (2d Cir. 2003). Congress provided a non-exclusive enumeration of "core matters" under 28 U.S.C. § 157(b)(2); a fraudulent transfer claim was designated a "core" proceeding under 28 U.S.C. § 157(b)(2)(H).

In Stern v. Marshall, the Supreme Court held that Congress's delineation of core matters in section 1572(b)(2) overstepped constitutional boundaries in at least one respect, and thus established "that identifying a claim as 'core' or 'non-core' under the bankruptcy law does not necessarily determine whether a bankruptcy court is constitutionally empowered to finally adjudicate the matter." Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP, No 11 Civ. 5994(CM), 2011 WL 5244463, at *4 (S.D.N.Y. Nov. 2, 2011). In Stern, the Supreme Court held that Congress improperly vested judicial power in a non-Article III tribunal when it allowed bankruptcy courts "to

enter a final judgment on a state law counterclaim" for tortious interference with contract, pursuant to §157(b)(2)(C), that was brought by the estate and "not resolved in the process of ruling on a creditor's proof of claim." 131 S.Ct. at 2620. The Court held that the bankruptcy court did not have the constitutional authority to issue a final judgment on the counterclaim because the debtor had "failed to demonstrate that her counterclaim falls within one of the 'limited circumstances' covered by the public rights exception," despite the fact that such a claim is characterized by the Bankruptcy Code as a "core" claim. Id. at 2604, 2618 (quoting N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 61 n. 12 (1982)). The Supreme Court noted that its decision was a "narrow" one, and involved "one isolated respect" of the Bankruptcy Act, and did not "meaningfully change[ ] the division of labor" between bankruptcy courts and district courts. Stern, 131 S.Ct. at 2620.

Recognizing that the Court in Stern stated its holding was "narrow," courts have limited Stern's holding to only those "core" claims that involve the "unique set of facts" found in Stern, "including that (1) the counterclaim would not be resolved by adjudication of the creditor's proof of claim; (2) the counterclaim was 'not completely dependent upon adjudication of a claim created by federal law'; and (3) the creditor 'did not truly consent' to resolution in bankruptcy court." In re Extended Stay, Inc., No. 11 Civ. 5394(SAS), 2011 WL 5532258, at *5 (S.D.N.Y. Nov. 10, 2011); Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *9-10, 12-13; In re Salander O'Reilly Galleries, 453 B.R. 106, 115-116 (Bkrtcy. S.D.N.Y. 2011) ("Stern is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case, and the ruling does not remove from the bankruptcy court its jurisdiction over matters directly related to the

4

estate that can be finally decided in connection with restructuring debtor and creditor relations.").

Under 28 U.S.C. § 157(d) a "district court may withdraw . . . any case or proceeding referred [to a bankruptcy court] on its own motion or on a timely motion of any party, for cause shown." Before Stern, a district court, in evaluating whether "cause" is shown, considered the "Orion factors": "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993). After Stern, a court's consideration of a motion to withdraw reference to bankruptcy court should, in addition to the Orion factors, include consideration of: whether the claims at issue involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim, if any; and whether the parties consent to final adjudication by a non-Article III tribunal. See In re Extended Stay, Inc., 2011 WL 5532258, at *8; Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *7.

## ANALYSIS

Defendants argue that cause exists for permissive withdrawal because: (1) Stern established that the Bankruptcy Court does not have constitutional power to adjudicate a fraudulent transfer claim to final judgment; (2) the Bankruptcy Court lacks subject matter jurisdiction to adjudicate these claims to final judgment or to issue proposed findings of fact and conclusions of law; and (3) the Orion factors, and specifically, considerations of judicial inefficiency, unnecessary cost and delay favor withdrawal.

5

### I. Bankruptcy Court's Ability To Enter A Final Judgment In This Action

To determine whether a bankruptcy court can adjudicate a "core" claim to final judgment, a court, under the logic employed in Stern, should consider: whether the claims involve a public or private right; whether the claims will be resolved in ruling on a creditor's proof of claim; and whether the parties consent to final adjudication by a non-Article III tribunal.

*A. A Fraudulent Transfer Claim Involves A Private Right*

In Granfinanciera S.A. v. Nordberg, 492 U.S. 33, 55-56 (1989) the Supreme Court held that "a bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private right than a public right as we have used those terms in our Article III decisions." The Court reasoned that fraudulent conveyance suits were "quintessentially suits at common law that more nearly resemble state law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do credits' hierarchically ordered claims to a pro rata share of the bankruptcy res." Id. Granfinanciera, however, "was explicit in limiting its holding to the Seventh Amendment issue presented—a noncreditor's insistence that it had a right to a jury trial—it left open the issues decided by Stern: 'We do not decide today whether . . . the Seventh Amendment or Article III allows jury trials in [fraudulent conveyance, private right] actions to be held before non-Article III bankruptcy judges subject to the oversight provided by the district courts . . . .'" Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *9 (quoting Granfinanciera, 492 U.S. at 64).

In Stern, the Court relied on and recounted the Court's prior holding in Granfinanciera that a bankruptcy trustee's right to recover a fraudulent conveyance is

6

"more accurately characterized as a private right than a public right." Id. at 2614 (quoting Granfinanciera, 492 U.S. at 55-56). The Court stated that the tortious interference "counterclaim—like the fraudulent conveyance claim at issue in Granfinanciera—does not fall within any of the varied formulations of the public rights exception in this Court's cases." Id. at 2614  The Court went on to state that "Congress could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court . . . ." Id. at 2614 & n.7 (citing Granfinanciera, 492 U.S. at 56 & n.11).

These Supreme Court precedents demonstrate that a fraudulent transfer claim involves a private right.  See Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *9 (Stern held that "a fraudulent conveyance action implicating private rights must be finally determined in an Article III forum"); Dev. Specialists, Inc. v. Orrick, Herrington & Sutcliffe, LLP, No. 11 civ. 6337(CM), 2011 WL 6780600, at *3 (S.D.N.Y. Dec. 23, 2011) (same); In re Heller Ehrman LLP, No. C 11-04848 CRB, 2011 WL 6179149, at *5 (N.D.Cal. Dec. 13, 2011) ("By likening the claim in question explicitly to the fraudulent conveyance claims in Granfinanciera, this Court believes that Stern clearly implied that the bankruptcy court lacks constitutional authority to enter final judgment on the fraudulent conveyance claims presented here.")

  B. *The Fraudulent Transfer Claims Will Not Necessarily Be Decided In Ruling On A Proof of Claim*

In In re Extended Stay, Inc. a court denied a post-Stern motion for mandatory or permissive withdrawal in part because many of the fraudulent transfer claims at issue were "asserted against creditors who filed proofs of claim in the Debtor's bankruptcy" and thus "would likely be 'resolved in the process of ruling on [their] proof[s] of claims.'" 2011 WL 5532258, at *6 & n. 70 (quoting Stern, 131 S.Ct. at 2620).  The fact that one

defendant filed a proof of claim, however, does not necessarily mean that all fraudulent transfer claims will be resolved in ruling on the one proof of claim. See Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *9 (granting motion to withdraw reference despite fact that one of ten defendants filed a proof of claim because ruling on that proof of claim would not resolve all the fraudulent transfer claims at issue).

In this case, in January 2004, Defendant West Boca Security and an indirect subsidiary of FPL Group filed proofs of claims against Adelphia. On June 3, 2004, Defendant West Boca Security and the indirect subsidiary of FPL Group sold, transferred and assigned their interest in these claims to a third party, and have not since been a creditor of Adelphia. (See Def. Br. 2 n.2.) On June 24, 2004, Adelphia filed the instant action. The parties have not apprised the Court as to: whether the third party proof of claim has been resolved; if not, in what court the claim is being litigated; and whether the fraudulent transfer claims in this action would be resolved in ruling on the third party proof of claim. In light of the Court's lack of information about the third party proof of claim, which originated with Defendants, the Court cannot conclude that Plaintiff's fraudulent transfer claims will "necessarily [be] resolv[ed] by ruling on a [third party] creditor's proof of claim in bankruptcy." Stern, 131 S.Ct. at 2611.

*C. Defendants Have Not Knowingly Consented*

Stern suggests that a party's consent can provide a sufficient basis for final adjudication by an Article I court. See Stern, 131 S.Ct. at 2614; Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *10-11. Congress contemplated a party's consent would provide a sufficient basis to allow a Bankruptcy Court to issue a final judgment where it could not otherwise do so. See 28 U.S.C. § 157(c)(2) (allowing a bankruptcy

8

court to issue final orders in non-core proceedings with the consent of the parties). Consent, however, should "only be found where it is fully knowing." Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *12.

Plaintiffs argue that Defendants consented to the Bankruptcy Court's final adjudication of the instant claims in 2007 by successfully opposing Plaintiff's motion to withdraw reference to the Bankruptcy Court. (Pl. Opp. 12.)[2] Defendants sought to remain in Bankruptcy Court in 2007 because, inter alia, the claim was "core." There is no indication that Defendants, in conceding that the claim was "core," expressly consented to final adjudication by a bankruptcy judge. While this may have been implied at that time, "Stern provided [defendants] with a legal basis to contest the Bankruptcy Court's adjudicative power that they did not have before." Dev. Specialists, Inc. v. Akin Gump, 2011 WL 5244463, at *12.

Accordingly, the Court will not read Defendants pre-Stern conduct as an implied consent to final adjudication by the Bankruptcy Court because any such consent was not knowingly made. See id. (holding that defendants "should not be found to have [impliedly] consented to final adjudication in the Bankruptcy Court" based on their pre-Stern conduct); see generally Stern, 131 S.Ct. at 2607-08, 2614 (finding that defendant's consent to the bankruptcy court's final adjudication of its proof of claim did not mean defendant consented to the bankruptcy court's final adjudication of plaintiff's state law counterclaim). Post-Stern, Defendants have explicitly indicated that they do not consent to final adjudication by the Bankruptcy Court. (See Def. Reply. Br. 6.)

---

[2] Plaintiff also argue that Defendants stated that they "actually wanted to litigate it here [i.e. in Bankruptcy Court]." (Pl. Opp. 12.) This statement was made by Defendants' new counsel in arguing for withdrawal in light of Stern. (Zimmer Decl. Ex. F 6:16.) The Court assumes that defense counsel's statement is true, but does not find that it sheds light on whether Defendants knowingly consented in 2007 to a final adjudication by a Bankruptcy Court.

### D. Bankruptcy Court's Inability To Render A Final Judgment In This Matter

The fraudulent transfer claims involve a private right; the adjudication of this claim will not necessarily be decided in ruling on a third party proof of claim; and Defendants have not consented to final adjudication by the Bankruptcy Court.  In light of those findings, the fraudulent transfer action here is beyond the Bankruptcy Court's final adjudicatory power.  See Dev. Specialists, Inc. v. Orrick, 2011 WL 6780600, at *3; In re Heller Ehrman LLP, 2011 WL 6179149, at *5.

## II. A Bankruptcy Court's Ability To Enter Proposed Findings Of Fact And Conclusions Of Law

Having determined that the Bankruptcy Court lacks the constitutional power to issue a final judgment in this proceeding, the Court considers whether the Bankruptcy Court has "statutory or other authority to submit proposed findings of fact and conclusions of law to [this] [C]ourt under the Judicial Code, Fed. R. Bankr.P. 9033 or the Standing Order of Reference[.]'  In re Refco Inc., No. 05-60006, 2011 WL 5974532, at *2 (Bkrtcy.S.D.N.Y. Nov. 30, 2011).[3]

This Court begins by noting that the Southern District of New York's Board of Judges recently amended its Standing Order of Reference to bankruptcy judges, giving them explicit authority to issue proposed findings and conclusions in connection with core matters that are found to fall within the Stern holding.  In accordance with that Order, the Bankruptcy Court has the authority to issue proposed of fact and conclusions of law in this case.

---

[3] The holding in Stern did not involve an analysis of subject matter jurisdiction.  See Stern, 131 S.Ct. at 2607 ("Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court . . . . [t]hat allocation does not implicate questions of subject matter jurisdiction."); In re Extended Stay, Inc., 2011 WL 5532258, at *6 & n.65 ("Stern is not a decision concerning subject matter jurisdiction.").

Under 28 U.S.C. § 157(b)(1), bankruptcy judges "may hear and determine all cases under title 11 and all core proceedings arising under title 11 . . . and may enter appropriate orders and judgments, subject to [deferential] review. . . ." Under 28 U.S.C. § 157(c)(1), a Bankruptcy Court may hear and "submit proposed findings of fact and conclusions of law to the district court," subject to de novo review, in a non-core proceeding. These provisions suggest that "Congress wanted Bankruptcy Judges to finally adjudicate bankruptcy-related matters whenever Article III permitted them to do so, and to issue recommended findings subject to de novo review in the District Court whenever it did not." In re Coudert Bros. LLP, 2011 WL 5593147, at *13.

"[U]nderstandably, the Judicial Code and Bankruptcy Rules do not specifically contemplate bankruptcy courts issuing proposed findings of fact and conclusions of law in core matters where the particular provision of 28 U.S.C. § 157(b)(2)"—in this case 28 U.S.C. § 157(b)(2)(H), which designates fraudulent transfer claims as "core"—is found to violate Article III of the Constitution." In re Refco Inc., 2011 WL 5974532, at *9. Congress's failure to anticipate Stern, and provide bankruptcy courts with the explicit power to issue findings of fact and conclusions of law in core matters, however, is not dispositive. See id.; In re Heller Ehrman LLP, 2011 WL 6179149, at *5-6.

"Since Congress delegated broader authority to bankruptcy courts in core matters than non-core matters, 28 U.S.C. § 157(b)(1), (c)(1), and the delegation included the authority to hear and determine all cases and enter appropriate orders, 28 U.S.C. § 157(b)(1), there appears to be no reason why bankruptcy courts cannot continue to hear all pre-trial proceedings and enter as an appropriate order proposed findings of fact and conclusions of law in the manner authorized by Section 157(c)(1)." In re Heller Ehrman

11

LLP, 2011 WL 6179149, at *6; see also In re Refco Inc., 2011 WL 5974532, at *10 ("it would be absurd to conclude that the bankruptcy courts are deprived of jurisdiction over matters designated by Congress as core when, for Article III reasons, Congress gave jurisdiction to bankruptcy courts to issue proposed findings of fact and conclusions of law in non-core matters.")

Allowing a bankruptcy judge to issue findings of facts and conclusions of law in core matters is described favorably in Stern:

> [T]he current bankruptcy system . . . requires the district court to review *de novo* and enter final judgment on any matters that are "related to" the bankruptcy proceedings, and permits the district court to withdraw from the bankruptcy court any referred case, proceeding or part thereof. [Respondent] has not argued that the bankruptcy courts are barred from hearing all counterclaims or proposing findings of fact and conclusions of law on these matters, but rather that it must be the district court that finally decides them. We do not think the removal of counterclaims such as [Petitioner's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . .

131 U.S. S.Ct. 2620. Removing fraudulent transfer actions from bankruptcy court jurisdiction would meaningfully change the division of labor between bankruptcy and district courts. In re Heller Ehrman LLP, 2011 WL 6179149, at *6; In re Coudert Bros. LLP, No. 11-2785 (CM), 2011 WL 5593147, at *13 (S.D.N.Y. Sept. 23, 2011) ("treating the findings below as mere recommendations subject to de novo review here . . . preserves as far as possible the division of labor intended by the 1984 Act."); accord In re Extended Stay, Inc., 2011 WL 5532258, at *5 ("In the event that the bankruptcy court does not have constitutional authority to enter a final judgment on certain claims, it may submit proposed findings of fact and conclusions of law to this Court. Withdrawing the reference simply due to the uncertainty caused by Stern is a drastic remedy that would

12

hamper judicial efficiency on the basis of a narrow defect in the current statutory regime . . . .").

Thus, "the logical conclusion" (and the most realistic one too) is that bankruptcy courts may issue proposed findings of facts and conclusions of law in such fraudulent transfer actions. In re Heller Ehrman LLP, 2011 WL 6179149, at *6; In re Refco Inc., 2011 WL 5974532, at *10; In re Coudert Bros. LLP, 2011 WL 5593147, at *13.

**III. Permissive Withdrawal Under The Orion Factors**

The final issue is whether to grant Defendants' motion to withdraw reference to Bankruptcy Court or to keep the reference and have the Bankruptcy Court issue proposed findings of fact and conclusions of law in this case. The Court therefore returns to the Orion factors: "whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law." In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993). The Court has considered all of the Orion factors and finds that they weigh against granting Defendants' motion to withdraw reference to Bankruptcy Court.

The Bankruptcy Court has a wealth of knowledge and experience with fraudulent transfer claims, and with this case in particular, having overseen the Adelphia bankruptcy for ten years and this action for seven years. Considerations of efficiency thus strongly weigh in favor of keeping the referral to Bankruptcy Court. See California v. Enron Corp., 05 Civ. 4079 (GBD), 2005 U.S. Dist. LEXIS 9548, at *10 (S.D.N.Y. May 17, 2005) ("judicial efficiency as well as the uniform administration of the bankruptcy court proceedings weigh in favor of not withdrawing the reference . . . . [because] [t]he Bankruptcy Court has presided over the Enron bankruptcy cases for over three years. . . .

[and thus] is more thoroughly familiar with the Debtors claims and issues in the instant matter. . . ."); In re Extended Stay, Inc., 2011 WL 5532258, at *9 (finding judicial economy weighed in favor of remand where the bankruptcy court had been administering the case for over two years and noting that even if the bankruptcy court can only issue proposed findings of facts and conclusions of law this "will narrow the issues to be resolved by this Court"). While the Court will have to review the Bankruptcy Court's findings of fact and conclusions of law de novo, this is not outside "the usual process," since "[p]arties frequently appeal bankruptcy court decisions to the district court" and district courts frequently review reports and recommendations from Article I tribunals, such as magistrate courts. See In re Extended Stay, Inc., 2011 WL 5532258, at *9.

In addition, maintaining the reference to Bankruptcy Court is in line with the Supreme Court's intent to not "meaningfully change[ ] the division of labor in the current statute," Stern 131 U.S. S.Ct. 2620, and Congress intent that bankruptcy courts to have broad authority to hear "core" matters, see 28 U.S.C. § 157(b)(1), (c)(1).

## CONCLUSION

For the foregoing reasons, Defendants' motion to withdraw reference to the Bankruptcy Court is DENIED. The Clerk of the Court is directed to close this motion (Dkt. No.1) and this case.

The Bankruptcy Court should proceed with the reference, conduct the trial and issue proposed findings of fact and conclusions of law.

Dated: New York, New York
January 30, 2012

PAUL A. CROTTY
United States District Judge

14